# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICK DIXON,

Plaintiff,

v.

K. ALLISON, et al.,

Defendants.

Case No. 1:10-cv-02365-SAB-PC

ORDER DISMISSING CLAIMS AND DEFENDANTS AND GRANTING PLAINTIFF LEAVE TO FILE A FOURTH AMENDED COMPLAINT

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1] Currently before the Court is Plaintiff's November 10, 2014 third amended complaint.

## I.

## PROCEDURAL HISTORY

Plaintiff, formerly an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at the Substance Abuse Treatment Facility at Corcoran (SATF), brings this action against defendant correctional officials employed by the CDCR at SATF. Plaintiff names the following individuals: Warden K. Allison; Associate Warden T. Wan; Captain F. Vasquez. Plaintiff also names former CDCR Secretary Matthew Cate.

In the original complaint, Plaintiff alleged that on July 25, 2008, there was a prison

[1] Plaintiff filed a consent to proceed before a magistrate judge on January 20, 2011. (ECF No. 7.)

disturbance involving black and white inmates. As a result, Plaintiff alleged that Defendants Allison, Wan and Vasquez placed the facility on a modified program (lockdown), and issued monthly Program Status Reports (PSRs) regarding the status of the lockdown. Plaintiff alleged that the PSR indicated that the white inmates were not allowed certain privileges. Plaintiff, who was not involved in the disturbance, alleged that the white inmates on lockdown were denied more rights than the black inmates. On April 17, 2013, an order was entered, dismissing the complaint and granting Plaintiff leave to file an amended complaint. (ECF No. 12.) The Court provided Plaintiff with the legal standards for a claim under the Equal Protection Clause, and advised Plaintiff that he failed to allege facts that linked each individual Defendant with conduct that constituted a claim under the Equal Protection Clause.

Plaintiff filed a first amended complaint, and on January 27, 2014, an order was entered, dismissing the first amended complaint and granting Plaintiff leave to file a second amended complaint. (ECF No. 15.) Plaintiff filed a second amended complaint on May 8, 2014, (ECF No. 21) and the third amended complaint that is now before the Court on November 10, 2014. (ECF No. 25.)

**III.**

**ALLEGATIONS**

In the third amended complaint, Plaintiff sets forth his claims as follows:

> Plaintiff brings five claims arising out of two separate issues, incidences, continuing violation doctrine that occurred at SATF. Four claims stem from Plaintiff's allegation that prison officials violated his rights under the Eighth Amendment for lack of outdoor exercise, and physical harms resulting from the defendants' actions, including the Fourteenth Amendment, when defendants violated Plaintiff's Equal Protection rights by deprivations. Plaintiff brings a fifth claim under the Fourteenth Amendment against all defendants for improperly denied his right to equal protection and treatment, access to daily outdoor exercise, including privileges and activities granted to other races, as movement without restraint, feeding in the culinary hall, visiting with contact to family members & friends, work and education, daily showers, medical, access to law library, dayroom, recreation activities, commissary canteen, quarterly packages , ducats for self-help programs, phone calls to family and friends, and religious services.

(Am. Compl. 6:7-18.) The first and second amended complaints consisted of long, rambling,

narrative allegations. The third amended complaint is similarly vague and rambling. Plaintiff argues that his due process rights were violated because he was denied access to programs and activities for the seventeen months that he was on lockdown. Plaintiff alleges that he suffered physical and emotional injury as a result. Plaintiff also alleges that he was denied access to legal and religious activities. Plaintiff alleges that, because of the inmate grievances that he filed, Defendants were on notice that Plaintiff was being discriminated against because of his ethnicity.

Plaintiff alleges that during the seventeen month lockdown, Facility C (where he was housed), operated under three different Program Status Reports (PSRs): SATF-003-09-06252; SATF-0003-09-06-0235; SATF-0003-08-07-0293. Plaintiff alleges that the PSRs indicate that Defendants engaged in race-based discrimination. Plaintiff sets forth in detail factual allegations regarding lockdowns in general, and refers to restrictions imposed on inmates at other facilities. Plaintiff also alleges that Defendants failed to make individualized determinations, instead imposing blanket race-based determinations. Plaintiff alleges that Defendants "have no legitimate penological interests in imposing white-based, blanket race-based 15 to 17 month continues lockdown to plaintiff when no evidence or material fact determined he was a threat, or by the grievance notice." (Id. 11:20.)

Plaintiff alleges that the lock-down was ordered as a result of a prison disturbance between African-American and White inmates at SATF on July 25, 2008. Plaintiff was transferred to SATF from another prison on December 15, 2008, Nine days after arriving, Plaintiff appeared before the Institution Classification Committee, and was advised that the facility was on lockdown. Plaintiff filed an inmate grievance, and explained to his correctional counselor that he was not involved in the disturbance. Plaintiff suggested a less restrictive alternative, which was denied. Plaintiff alleges that on November 9, 2009, the lockdown was lifted for inmates over 45 years of age (including white and African-American inmates). Plaintiff alleges that being on lockdown for a disturbance caused by other inmates "was not narrowly tailored to advance a compelling government interest, especially upon analysis facts described above." (Id. 18:10.)

Plaintiff attaches as exhibits to his complaint copies of his inmate grievances and the PSRs at issue.[2] Plaintiff's Exhibit D includes PSRs dated October 27, 2008, July 20, 2009, and August 18, 2009. The PSRs are numbers SATF-0003-09-06/0252; SATF-0003-09-06-0235; SATF-0003-08-07-0293. All of the PSRS indicate that they apply to either all racial classifications, or "Blacks, Hisp., Whites." There are no indications in the PSRs that white inmates were treated differently than other racial classifications involved in the prison disturbance. All of the PSRs indicate that the reasons for the lockdowns were specific instances of race-based prison violence.

Plaintiff's Exhibit D-7 is a copy of the Director's Level Appeal Decision, dated December 17, 2009, addressing Plaintiff's grievance that all Caucasian inmates have been discriminated against due to being placed on a modified program. Plaintiff was informed that

> Due to the magnitude of the incident that occurred on July 25, 2008, which involved African American inmates and Caucasian inmates, a threat assessment had to be conducted to ensure the safety and security of the institution, staff, and inmates. The assessment includes interviews from all races of the inmate population on the facility. The appellant was informed that the warden makes the decision as to institution lockdowns, which includes the appellant's program/privileges based upon the information obtained. The appellant was told that numerous attempts have been made over the past year to return Facility "C" to normal program but the attempts have been unsuccessful as incidents have occurred involving Caucasian inmates when the modified program is lifted. The appellant was informed that a Program Status Report is faxed to the Associate Director on a weekly basis with updates regarding that particular modified program and the Inmate Advisory Council communicates the information to the inmate population. The appellant's appeal was partially granted as he was informed that he will be returned to normal program as soon as the Warden determined that it is safe to do so. The policy regarding modified programs will not change based upon the contents of his appeal request.

(Exh. D-7.)

Plaintiff alleges generally that he was denied access to the law library while on lockdown. Plaintiff alleges that on several occasions, he attempted to gain law library access to

[2] The Court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. See Lovell v. Chandler, 303 F.3d 1030, 1052 (9th Cir. 2002); Steckman v. Hart Brewing, 143 F.3d 1293-1295-96 (9th Cir. 1998).

file grievances, legal claims, temporary restraining orders, and to pursue this action. Plaintiff alleges that Defendants' policies hindered his ability to pursue his claim for relief. Plaintiff was told that only priority legal users were allowed access to the law library

Plaintiff also alleges that he was deprived of outdoor exercise in violation of the Eighth Amendment. Plaintiff alleges a lack of exercise generally, and sets forth in great detail the physical injuries caused by inactivity: "headaches, nightmares, blurred vision, sleeping all day and night from being depressed." (Id. 22:12.) Plaintiff eventually required surgery, resulting in removal of parts of his colon, Plaintiff alleges that this was caused by a lack of vitamin D. Plaintiff alleges that Defendants "never authorized exercise privileges to Plaintiff, or other Whites during the above reference time period." (Id. 23:1.)

**IV.**

**ANALYSIS**

**A. Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class. Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 250 F.3d 668, 686 (9th Cir. 2001). Plaintiff may also state a claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, also is unconstitutional within prisons. See Johnson v. California, 543 U.S. 499, 505-06 (2005). A prison classification based on race is immediately suspect and is subject to the

same strict scrutiny as a racial classification outside prison. See Id. at 508-10. Prison officials must therefore demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest. Id. at 510-11; Richardson v. Runnels, 594 F.3d 666, 671 (9th Cir. 2010)(applying Johnson to racial lockdowns in response to prison disturbances).

Johnson did not rule out race-based classifications and did not eliminate prison security as a reason for such classifications, but instead determined that prison officials must demonstrate that race-based policies are narrowly tailored to serve a compelling state interest such as prison security. See Johnson, 543 U.S. at 511-13, 515 (remanding case for determination of whether California Department of Corrections and Rehabilitation's policy of temporarily segregating inmates by race when they arrive in the prison system initially or are transferred to a new prison is narrowly tailored to serve a compelling state interest).

Here, the facts alleged by Plaintiff indicate that African-American, white, and in some cases, Hispanic, inmates were all placed on lockdown. Plaintiff does not allege any facts suggesting that white inmates were treated differently than African-American inmates. Plaintiff's central claim appears to be the harm that came from being placed on lockdown, in part, because of his ethnicity. As noted above, however, prison officials may use race as part of their justification for placing inmates on lockdown. The PSRs referred to by Plaintiff and included as an exhibit to his third amended complaint indicate that the lockdowns were implemented based upon factors such as race and prison violence. Specifically, the PSRs indicate that inmates of certain races attacked inmates of other races. Plaintiff was advised, in response to his inmate grievance, that officials attempted to lift the modified program, but violence ensued. Prison officials in Richardson were liable because they used race as the sole justification for imposing a lockdown of African-American inmates, Richardson, 594 F.3d at 671. Here, Plaintiff was provided with notice that White and African-American inmates were being placed on modified program because of specific instances and threats of violence. Plaintiff therefore fails to state a claim for relief on his claim of violation of the Equal Protection Clause.

**B. Conditions of Confinement**

Plaintiff has alleged facts, liberally construed, that he was deprived of exercise the entire

time that he was on lockdown. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to him. e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Richardson, 594 F.3d at, 672. Inmates have a constitutional right to exercise and the denial of out-of-cell exercise for an extended period of time is sufficiently serious to state a claim under the Eighth Amendment. Thomas, 611 F.3d at 1151-52. The court in Thomas specifically held that a deprivation of outdoor exercise for almost 14 months was sufficiently serious to constitute an Eighth Amendment deprivation. Id. Plaintiff's complaint, liberally construed, alleges that Plaintiff was denied outdoor exercise for fifteen to seventeen months.

Plaintiff's Exhibit D indicates that Defendant Allison was responsible for implementing the modified lockdown. Plaintiff therefore states a claim relief against Defendant Allison on his Eighth Amendment claim. Regarding Associate Warden Wan and Captain Vasquez, Plaintiff fails to allege facts indicating that they were responsible for placing Facility C on lockdown, or that they had the ability or authority to provide outdoor exercise and failed to do so.

Regarding Defendant CDCR Secretary Cate, Plaintiff is advised that government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009). Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions. Id. at 673. In other words, to state claim for relief under section 1983, Plaintiff must link Secretary Cate with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. He has failed to do so here. Secretary Cate should therefore be dismissed for Plaintiff's failure to state a claim against

him.

**C. Access to Courts**

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). However, to state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation." Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011)(citing Lewis, 518 U.S. at 348)(internal quotation marks omitted); Christopher v.Harbury, 536 U.S. 403, 415(2002). Plaintiff alleges generally that he could not gain access to the law library because he was not a priority legal user. Plaintiff alleges that he could not file grievances, temporary restraining orders, or legal actions. Plaintiff has not, however, alleged any facts suggesting that he suffered actual injury within the meaning of Lewis. Plaintiff has successfully complied with Court deadlines in this action. Plaintiff does not refer to any specific action, and does not indicate that he suffered any adverse legal consequences as the result of any actions of any of the Defendants that constitutes actual injury as that term is defined above. Because Plaintiff raises this claim for the first time in the third amended complaint, the Court will grant Plaintiff an opportunity to cure this defect in a fourth amended complaint, should he choose to file one.

**D. Religious Expression**

**1. First Amendment**

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann, 707 F.3d at 1122 (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1997). The protections of the Free Exercise clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional right will be upheld "if it is reasonably related to legitimate penological interests." Shakur v. Schriro, 514 F.3d 878, 884-5 (9th Cir. 2008)(quoting Turner v. Safley,482 U.S. 78, 89 (1987).

Plaintiff's vague allegation that his religious rights were violated fails to state a claim for relief. Plaintiff does not identify a particular religious practice, and does not allege any facts that indicate how any exercise of religious practice was impinged upon. The Court notes that Plaintiff's Exhibit D, the PSRs at issue, indicates that each of the PSRs allowed for chaplain visits while on modified lockdown. This claim should therefore be dismissed. Because Plaintiff asserts this claim for the first time in the third amended complaint, the Court will grant Plaintiff one opportunity to cure this defect in an amended complaint.

**2. RLUIPA**

To the extent Plaintiff seeks to assert a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), Plaintiff is advised that he must allege facts plausibly showing that the challenged policy and the practices it engenders impose a substantial burden on the exercise of his religious beliefs. Plaintiff bears the initial burden of persuasion on this issue. Hartmann, 707 F.3d at 1124-25. "Courts are expected to apply RLUIPA's standards with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id. (citing Cutter v. Wilkinson, 544 U.S. 709, 723 ((2003)(internal quotations omitted.

Plaintiff is also advised that money damages are not available under RLUIPA against the state or state officials sued in their official capacities. Sossamon v. Texas, 563 U.S. 277, 281 (2011); Alvarez v. Hill, 667 F.3d 1061, 1063 (9th Cir. 2012).

**V.**

**CONCLUSION AND ORDER**

Plaintiff fails to state a claim of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff was previously notified of the applicable legal standard and the deficiencies in his pleading, and despite guidance from the Court, Plaintiff's third amended complaint is largely identical to the original complaint. Based upon the allegations in Plaintiff's original complaint, first amended complaint, second amended complaint, and third amended complaint, the Court is persuaded that Plaintiff is unable to allege

any additional facts that would support a claim for a violation of the Equal Protection Clause, and further amendment would be futile. See Hartmann 707 F.3d at 1130("A district court may deny leave to amend when amendment would be futile.") Based on the nature of the deficiencies at issue, the Court finds that further leave to amend this claim is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Plaintiff's complaint states a cognizable claim against Defendant Warden Allison for denial of exercise for over fifteen months, in violation of the Eighth Amendment. Plaintiff fails to state a claim for relief on his claims of denial of access to the courts and religious expression claims. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff does not wish to file a fourth amended complaint and is agreeable to proceeding only against Defendant Allison on his Eighth Amendment claim, Plaintiff may so notify the Court in writing. The other defendants and claims will then be dismissed for failure to state a claim. Plaintiff will then be provided one summons and one USM-285 form for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendant Allison.

If Plaintiff elects to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678-679; Jones, 297 F.3d at 934. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . Twombly, 550 U.S. at 555 (citations omitted). The mere possibility of misconduct is insufficient to state a claim. Iqbal, 556 U.S. at 678. Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 1467, 1474 (7th Cir. 2007)(no "buckshot" complaints).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana,Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.

1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's claim of racial discrimination in violation of the Equal Protection Clause is dismissed, without leave to amend.
2. The Clerk's Office shall send to Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
    a. File a fourth amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file a fourth amended complaint and is willing to proceed only against Defendant Allison on his Eighth Amendment claims; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: **April 6, 2016**

UNITED STATES MAGISTRATE JUDGE